UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

REFINED METALS CORPORATION,     )
                                      )
            Plaintiff,           )
                                      )
               v.                )      No. 1:17-cv-02565-SEB-TAB
                                      )
NL INDUSTRIES, INC.,              )
                                      )
          Defendant.       )

**ORDER ON DEFENDANT'S MOTION TO DISMISS COMPLAINT (DKT. 10)**

This is an action for cost recovery and contribution under the Comprehensive

Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42

U.S.C. § 9601 *et seq.*, as amended by the Superfund Amendments and Reauthorization

Act of 1986 (SARA), Pub. L. No. 99-499, 100 Stat. 1613, brought by Refined Metals

("Refined"), a Delaware corporation, against NL Industries ("NL"), a New Jersey

corporation. There are also state claims for common law indemnity and cost recovery

under Indiana's Environmental Legal Actions statute ("ELA Statute"), Ind. Code ch. 13-

30-9. NL has moved to dismiss the complaint, *see* Fed. R. Civ. P. 12(b)(6), chiefly on

timeliness grounds.

For the reasons explained below, the motion is granted.

**Background**

The complaint alleges as follows. From 1968 until 1980, NL operated a lead

reclaiming facility ("the Facility") at a site in Marion County, Indiana ("the Property"). In

1

1980, NL sold the Property and the Facility to Refined, which operated the Facility until 1995 and continues to own the Property.

In 1990, the United States government, on behalf of the U.S. Environmental Protection Agency (EPA), filed a complaint in this Court before the undersigned judge seeking remediation of ground- and air-pollution caused by the Facility's smelting operations. The Indiana Department of Environmental Management (IDEM) intervened as a party plaintiff.

In 1998, Refined, the United States, and IDEM, "having recognized that settlement of this matter [was] in the public interest," tendered a proposed consent decree ("the 1998 Consent Decree") "in order to compromise and settle the claims stated in the Complaint against [Refined] without further litigation[.]" Dkt. 12 Ex. A, at 4; *also* No. IP90-C-2077-B/S, Dkt. 529. We consider here the 1998 Consent Decree in connection with NL's Rule 12(b)(6) motion without converting it to a motion for summary judgment, *see* Fed. R. Civ. P. 12(d), because the 1998 Consent Decree is referred to in the complaint and central to Refined's claims, *see Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013), and because we may take judicial notice of our own docket. *See id.*; *Griffin v. United States*, 109 F.3d 1217, 1219 n.1 (7th Cir. 1997).

In parts relevant here, the 1998 Consent Decree provided as follows: Among others, one of its purposes was for Refined "to recommend a final corrective measure[] for [the Facility] necessary to protect human health and the environment" and to "perform the final corrective measure[] as required by [EPA][.]" Dkt. 12 Ex. A, at 13. Refined was not required to and did not admit liability. But Refined was required to close

the Facility; investigate, propose, and implement a plan of remediation for the Property; and pay a $210,000 fine.

"In consideration of the actions that [were to be] performed and the payments that [were to be] made by [Refined] . . . ," the United States "covenant[ed] not to sue or to take administration action against [Refined]" under applicable provisions of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6901 *et seq.*, and the Clean Air Act of 1963 (CAA), 42 U.S.C. § 7401 *et seq*. Dkt. 12 Ex. A, at 37. IDEM "covenant[ed] not to sue or to take administrative action against [Refined] for violations alleged in [Indiana's] Complaint." *Id.* at 37–38. The United States "expressly reserve[d]" its rights to proceed against Refined under CERCLA, and IDEM "expressly reserve[d]" its rights to proceed under Indiana's superfund-type law, now codified at Ind. Code ch. 13-25-4.

The 1998 Consent Decree was to terminate once Refined and EPA concurred that Refined had fully complied with its terms and filed a joint motion for termination in this Court. No motion for termination having been filed, *see* No. IP90-C-2077-B/S, Dkt., the decree appears to be in full force still.

Refined submitted the results of its initial investigation to EPA in 2000. The final investigation report was submitted in 2003. A proposed remedy for the Property was approved by EPA following public notice and comment in 2009. The final remedial design was approved by EPA in 2014. "Refined began the onsite remedy implementation on August 4, 2014. The work has been completed, subject to final approval from EPA." Compl. ¶ 27. This action was filed on July 28, 2017.

**Standard of Decision**

A motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of the complaint. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). A complaint is sufficient where it gives a short, plain statement showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint must raise the right to relief above a speculative level by pleading claims that are plausible on their face, with all factual allegations taken as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Though statutes of limitations are affirmative defenses which the complaint need not anticipate or plead around, an action may be dismissed as untimely if the pleadings themselves "set forth everything necessary to satisfy the affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (internal quotation marks, citation omitted).

**I. The CERCLA Claims Are Precluded and Untimely (Counts I, II)**

Refined seeks to recover here against NL under CERCLA Sections 107(a) and 113(f). We conclude that only the latter section is available to it, but even that claim is time-barred. The CERCLA claims must therefore be dismissed with prejudice.

*A. Statutory Background*

We begin with an overview of the applicable statutory provisions. "Response" is defined at 42 U.S.C. § 9601(25) as "removal, remedy, and remedial action[,] . . . includ[ing] enforcement activities related thereto." "Remedy" and "remedial action" are defined at 42 U.S.C. § 9601(24) as

those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

A nonexclusive list of "remedies" follows. In contrast to the permanency of a CERCLA "remedy," "removal" is defined at 42 U.S.C. § 9601(23) as an immediate temporary or emergency measure. Under CERCLA, then, "removals" are short-term measures, "remedies" are long-term measures, and "responses" include both.

CERCLA provides two distinct mechanisms for the recoupment of response costs at Sections 107(a) and 113(f), respectively. *United States v. Atl. Research Corp.*, 551 U.S. 128, 131 (2007). The actions under these sections are mutually exclusive. *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 691 (7th Cir. 2014); *Bernstein v. Bankert*, 733 F.3d 190, 206 (7th Cir. 2013). If the statutory trigger for a Section 113(f) action is met, the plaintiff must proceed under that section and cannot proceed under Section 107(a). *NCR*, 768 F.3d at 690–91; *Bernstein*, 733 F.3d at 204–06. The actions "are governed by different statutes of limitation, and we must decide under which section [Refined's] CERCLA claim falls before determining whether it is time-barred." *Bernstein*, 733 F.3d at 200.

"Section 107(a) defines four categories of [potentially responsible parties, or] PRPs, and makes them liable for, among other things:

'(A)  all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe

> > not inconsistent with the national contingency plan;
> > [and]
>
> > '(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan.'"

*Atl. Research*, 551 U.S. at 131–32 (internal citation omitted) (first alteration added) (quoting 42 U.S.C. §§ 9607(a)(4)(A)-(B)). In *Atlantic Research*, the Supreme Court held that Subsection (B) quoted above "grants one PRP the same rights as an innocent party to sue another PRP for cleanup costs incurred in a removal or remedial action." *Bernstein*, 733 F.3d at 201.

A Section 107(a) cost recovery action "must be commenced—

> (A) for a removal action, within 3 years after completion of the removal action . . . ; and
>
> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph."

42 U.S.C. §§ 9613(g)(2)(A)-(B).

"Enacted as part of [SARA]," Section 113(f) "authorizes one PRP to sue another for contribution in certain circumstances." *Atl. Research*, 551 U.S. at 132 (citing 42 U.S.C. § 9613(f)). There are "two distinct rights to contribution, each subject to its own prerequisites." *Bernstein*, 733 F.3d at 201. The first, under Section 113(f)(1), is not relevant here. *See id.* The second is established by Section 133(f)(3)(B), which provides that

[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B). A Section 133(f)(3)(B) contribution claim "is *only* available to a person who has 'resolved its liability . . . in an administrative or judicially approved settlement.'" *Bernstein*, 733 F.3d at 202 (original ellipsis).

No Section 133(f) contribution action "for any response costs or damages may be commenced more than 3 years after—

    (A)   the date of judgment in any action under this chapter for recovery of such costs or damages, or

    (B)   the date of . . . entry of a judicially approved settlement with respect to such costs or damages."

42 U.S.C § 9613(g)(3)(A)-(B).

In sum, as relevant here, a Section 107(a) cost recovery action, which arises when a person incurs necessary costs of response, 42 U.S.C. § 9607(a)(4)(B), is limited by Section 113(g)(2) to three years "after completion of [a] removal action" and six years "after initiation of physical on-site construction of [a] remedial action[.]" *Id.* §§ 9613(g)(2)(A)-(B). A Section 113(f) contribution action, which arises when a person resolves its liability to the United States or a state for some or all of a response action or the costs of such action in a judicially approved settlement, *id.* § 9613(f)(3)(B), is limited by Section 113(g)(3) to three years after "the date of . . . a judicially approved settlement with respect to [any response] costs or damages." *Id.* § 9613(g)(3)(B).

    *B.  Application of Statutory Limitations Periods to Case at Bar*

In this case, NL argues: (1) the 1998 Consent Decree gave rise to a Section 113(f) contribution claim because it was a judicially approved settlement that resolved Refined's liability to the United States and Indiana for some or all of a response action; (2) the accrual of a Section 113(f) contribution claims bars a Section 107(a) cost recovery claim; (3) the three-year limitations period for contribution arising from the 1998 Consent Decree lapsed in 2001; and (4) any CERCLA claim Refined seeks to advance now is therefore untimely and must be dismissed.

Refined counters that (1) the 1998 Consent Decree did not cause a Section 113(f) contribution claim to accrue because the settlement resolved liability only under RCRA and the CAA, while EPA's rights under CERCLA and IDEM's rights under the state superfund law were expressly reserved; (2) the limitations period on a contribution claim either (a) has not yet begun to run and will not begin to run until judicial resolution of CERCLA liability, either by adjudication or by construction of the 1998 Consent Decree, making Refined's a "reasonable" "protective claim," Br. Opp. 13, or (b) began to run within the last three years when work at the Property was completed; and (3) in any event, its complaint sufficiently states a timely Section 107(a) cost recovery claim, "subject to any contribution counterclaim which may be filed." *Id.*

Because a Section 113(f) contribution claim knocks out a Section 107(a) cost recovery claim, we begin by asking whether Refined has a Section 113(f) claim against NL. A complaint does not state a claim on which relief can be granted before the claim has accrued. *Cole v. Lashbrook*, No. 18 C 50022, 2018 WL 1014512, at *1 (N.D. Ill. Feb. 22, 2018); *Perry v. Indiana*, No. 1:09-cv-018-DFH-TAB, 2009 WL 659179, at *2 (S.D.

Ind. Mar. 11, 2009) (Hamilton, J.). Refined cites no authority for its assertion that

"reasonable protective claims" may be heard and decided under CERCLA. Accordingly,

dismissal is in order if either the claim has accrued but has been untimely brought, or has

not yet accrued. The only difference in disposition would be dismissal with prejudice in

the former case or without prejudice in the latter case. *See Perry*, 2009 WL 659179, at *2.

We consider first whether accrual of a Section 113(f)(3)(B) claim requires

resolution of liability under CERCLA specifically. An affirmative answer means no such

claim has yet accrued, because the 1998 Consent Decree expressly reserved EPA's

CERCLA rights. Concluding, however, that the answer is negative, we consider next

whether the 1998 Consent Decree "resolved" Refined's liability within the meaning of

Section 113(f)(3)(B).

### 1. Resolution of CERCLA Liability Is Not Required to Trigger § 113(f)(3)(B)

The Seventh Circuit has not yet spoken to whether Section 113(f)(3)(B) requires

resolution of CERCLA liability specifically. The Third and Ninth Circuits have

concluded it does not. *Asarco LLC v. Atl. Richfield Co.*, 866 F.3d 1108, 1119–21 (9th Cir.

2017); *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 136–38 (3d Cir.

2013). The Second Circuit has concluded that it does. *Consol. Edison Co. of N.Y. v. UGI*

*Utils., Inc.*, 423 F.3d 90, 95 (2d Cir. 2005). We agree with the majority view.

In *Asarco*, where, as here, the contribution seeker had settled RCRA but not

CERCLA liability, the Ninth Circuit pointed to Section 113(f)(1), the "companion

provision" to Section 113(f)(3), which "expressly requires a CERCLA predicate" for

claim accrual. 866 F.3d at 1118 (citing 42 U.S.C. § 9613(f)(1)). "'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Id.* at 1118–19 (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). The Ninth Circuit further found its approach "consistent with CERCLA's broad remedial purpose" as well as "with EPA's own view" of the statute. *Id.* at 1119.

In *Trinity Industries*, the Third Circuit noted that "the plain language of the statute itself" contained no CERCLA-specific requirement. 735 F.3d at 136. That court relied further on its prior decision in *United States v. Rohm & Haas Company*, 2 F.3d 1265 (3d Cir. 1993), also a case in which the contribution seeker had settled RCRA but not CERCLA liability, where the court "located 'no support in the text or legislative history of CERCLA for the suggestion that identical oversight activity on the part of the government should be considered a removal if the government invokes CERCLA, but not a removal if other statutory authority is invoked.'" *Trinity Indus.*, 735 F.3d at 137 (quoting *Rohm & Haas*, 2 F.3d at 1275).

Both the Ninth and Third Circuits reasoned that the Second Circuit's contrary holding in *Consolidated Edison* rested on a flawed reading of the legislative history, *Asarco*, 866 F.3d at 1120; *Trinity Indus.*, 735 F.3d at 136, and both courts noted that the Second Circuit may now in fact be retreating from its approach. *Asarco*, 866 F.3d at 1120; *Trinity Indus.*, 735 F.3d at 137–38. Here, in opposition to the Ninth and Third Circuits' persuasive readings of CERCLA's text, structure, and purpose, Refined offers

10

no good reason to align ourselves with a minority position of doubtful vitality. Accordingly, we hold that 1998 Consent Decree need not have resolved CERCLA liability specifically in order to cause accrual of a Section 113(f)(3)(B) action.

### 2. *The 1998 Consent Decree "Resolved" Refined's Liability*

We move next to determining whether the 1998 Consent Decree "resolved" Refined's liability within the meaning of Section 113(f)(3)(B). The Seventh Circuit's decisions in *Bernstein* and *NCR* confronted the same question. In *Bernstein*, the court emphatically rejected defendants' position that "resolving" liability by settlement is equivalent to "entering into" a settlement. 733 F.3d at 210. Rather, "resolution" "involve[s] the concept of a conclusive determination of some kind. . . . [C]ourts consider liability to be 'resolved' when the issue of liability is *decided*, in whole or in party, in a manner that carries with it at least some degree of certainty and finality." *Id.* at 211–12.

Before the *Bernstein* court was an administrative order by consent (AOC or "consent order") between plaintiff contribution seekers and EPA. In finding that the consent order did not "resolve" liability, the court pointed to two elements of the order. First, the consent order provided that it did not "constitute any admission of liability" by the contribution seekers. *Id.* at 212. Second, though the contribution seekers had promised in the consent order to "perform certain removal actions, the EPA only *conditionally* promised to release [them] from liability" by a conditional covenant not to sue. *Id.* "[B]y the terms of the AOC itself, the resolution of liability would not occur until performance was complete, which is the first time at which the covenant would have any effect." *Id.* Making explicit which of these two features it regarded as dispositive, the

11

court went on to note that, "[o]f course, if the EPA had included an immediately effective promise not to sue as consideration for entering into the agreement, the situation would be different." *Id.* at 213 (discussing *RSR Corp. v. Comm'l Metals Co.*, 496 F.3d 552 (6th Cir. 2007)).

In *NCR*, the question before the court was again "whether [the contribution seeker] ha[d] resolved its liability to the government through [a] consent order[.]" 768 F.3d at 692. Relying on *Bernstein*, the court dispatched the question easily: the consent order included unconditional covenants not to sue from the federal and state governments, and therefore had "resolved" the contribution seeker's liability. The court noted that

> the [consent] order also ha[d] language conditioning the
> covenants on "satisfactory performance" of [the contribution
> seeker's] obligations. But this mean[t] only that the federal or
> state government could sue [it] if it breach[ed] the
> agreement—a standard arrangement that [was] consistent
> with the fact that neither the EPA nor [the state government]
> could sue [the contribution seeker] if it complied with its
> obligations. The agreement resolved . . . liability . . . . To hold
> otherwise would mean that no consent order could resolve a
> party's liability until the work under it was complete. Such a
> rule would be contrary both to the analysis in *Bernstein* and to
> common sense.

*Id.*

Application of the above principles to this case presents no difficulty. The 1998 Consent Decree resolved Refined's liability to the United States and a state for some or all of a response action by including EPA's and IDEM's unconditional covenants not to sue. Dkt. 12 Ex. A, at 36–38. It is true that the decree did not constitute "an admission of

any fact or legal issue, or of any liability or wrongdoing relating" to the Facility and the

Property, *id.* at 40, but *Bernstein* is clearer than a remediated stream that this fact is not

controlling. 733 F.3d at 213. The point is that Refined unconditionally assumed a legal

obligation and unconditionally received a legal benefit in order to resolve a legal

dispute—not that it pronounced a legal *mea culpa*. In this posture, Refined is like a

defendant in a criminal case who enters an *Alford* plea, which undoubtedly "resolves"

liability by agreement without admitting it. *See, e.g., Hicks v. Hepp*, 871 F.3d 513, 520

n.3 (7th Cir. 2017).

Refined offers no contrary argument as to "resolution" under *Bernstein* and *NCR*.

Rather, it has chosen to stand on its argument that the 1998 Consent Decree did not

"resolve" liability because it did not resolve CERCLA liability. *See* Br. Opp. 8–14. But

we do not find that argument persuasive, as explained above.

### 3. *The Action Is Untimely*

Because the 1998 Consent Decree resolved Refined's liability to the United States

and Indiana, at least in part, "entry" of it triggered the three-year limitations period. 42

U.S.C. 9613(g)(3)(B). The contribution claim advanced in this action, filed in 2017, is

therefore time-barred.

Understandably, Refined objects that the limitations period should not begin to run

where remediation work at the Property "required [EPA] approval every step of the

way[,]" Br. Opp. 14, and was only completed within the last three years. *Id.* But this

argument suffers from several deficiencies. First, *NCR* rejected as contrary to *Bernstein*

and common sense the notion that no settlement "resolves" liability until the work under

13

it is complete. 768 F.3d at 692. Second and relatedly, the plain language of Section

113(g)(3)(B) provides that the period begins to run from "entry" of a settlement, not from

its performance, discharge, or termination. 42 U.S.C. § 9613(g)(3)(B). Third, we take it

as fundamental that a plaintiff cannot itself choose when a limitations period to which it

is subject begins to run, for the contrary position is at war with every policy underlying

limitations periods. *See CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182–83 (2014)

(discussing such policies). Accepting Refined's position would permit plaintiffs to

choose for themselves when their rights accrue, and when the applicable limitations

periods begin to run, by yoking those events to conduct at least in part within plaintiffs'

control: to wit, the date of completion of settlement-mandated work.

Prudentially, we note that Section 113(g)(2) appears to provide for Refined's

concerns. That section supplies the limitations period for Section 107(a) cost recovery

actions, and requires a court to "enter a declaratory judgment on liability for response

costs or damages that will be binding on any subsequent action or actions to recover

further response costs or damages." 42 U.S.C. § 9613(g)(2). Though that procedure is

mandated for Section 107(a) claims, we perceive no reason why a declaratory judgment

action would not serve equally well in Section 113(f) claims, at the option of a

contribution seeker finding itself in Refined's position of certainty as to a PRP's

contribution liability but uncertainty as to its precise extent.

Finally, Refined argues that there were in fact multiple remedies ordered at the

Property, and that it seeks to recover now only for the latest. But "[s]uch slicing and

dicing of costs incurred under the same [settlement] makes little sense . . . ." *NCR*, 768

F.3d at 692. It is inconsistent with the posture of this case, which involves only one

settlement, and inconsistent too with the nature of a "remedy" within the meaning of

CERCLA, *see* Compl. ¶ 29 ("The corrective measures undertaken by Refined under the

Consent Decree are a remedy or remedial actions within the meaning of . . . CERCLA"),

which comprises "those actions consistent with *permanent* remedy . . . ." 42 U.S.C. §

9601(24) (emphasis added). Refined's liability was "resolved" only once and only one

judicially approved settlement was "entered." Accordingly, we conduct only one

timeliness analysis, which Refined's claim fails to satisfy. *Compare Bernstein*, 733 F.3d

at 215 (justifying two separate timeliness analyses with reference to two separate consent

orders requiring two "temporally discrete projects").

### 4. Conclusion

In sum, the 1998 Consent Decree resolved Refined's liability to the United States

and Indiana for some or all of the remediation of the Facility and the Property,

notwithstanding that it did not specifically resolve CERCLA liability. Entry of the 1998

Consent Decree caused accrual of a Section 113(f)(3)(B) contribution claim, precluding

resort to a Section 107(a) cost recovery action for the same remediation. But, under the

three-year limitations period established by Section 113(g)(3)(B), Refined's accrued

contribution action became time-barred long before this action was filed. Accordingly,

Refined's complaint states no viable federal claims and to that extent must be dismissed

with prejudice.

## II. Jurisdiction is Relinquished Over the State-Law Claims (Counts III, IV)

"When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. District of Columbia*, 138 S. Ct. 594, 597–98 (2018) (citing 28 U.S.C. § 1367(c)(3)). In other words, under the supplemental jurisdiction statute, 28 U.S.C. § 1367, there is a "sensible presumption that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). The Seventh Circuit has identified

> three situations in which jurisdiction over supplemental claims should be retained . . . : where the statute of limitations would bar the refiling of the supplemental claims in state court . . . ; where substantial federal judicial resources have already been expended on the resolution of the supplemental claims; and where it is obvious how the claims should be decided.

*Id.* (internal citation omitted) (citing cases).

Here, Refined pleaded in its complaint that "[t]his Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367." Compl. ¶ 3. There is also an allegation that "[t]he amount in controversy in this action exceeds $75,000.00 and is between citizens of different states[,]" *id.* ¶ 1, an invocation of our diversity jurisdiction. *See* 28 U.S.C. § 1332. However, the invocation is ineffective: the amount in controversy must exceed $75,000 "exclusive of interest and costs[.]" 28 U.S.C. § 1332(a); *see Powers v. Fultz*, 404 F.2d 50, 52 (7th Cir. 1968) (affirming dismissal of complaint failing to plead "exclusive of interest and costs"). In the face of

this insufficiency, we take Refined at its word that the state-law claims are here under our supplemental jurisdiction. Therefore, the federal claims having been dismissed, we must decide whether to relinquish jurisdiction over the balance.

All signs point to relinquishment. Taking the above recited factors in order, after *Artis* it is clear that the statute of limitations will not bar refiling. *Artis* considered the provision of the supplemental jurisdiction statute that the limitations period on any claim in federal court under supplemental jurisdiction "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). *Artis* held that to "toll" the limitations period "means to hold it in abeyance, *i.e.*, to stop the clock[,]" 138 S. Ct. at 598, the Seventeenth Century notwithstanding. *See id.* at 610 (Gorsuch, J., dissenting). Thus, if Refined's state-law claims were timely when filed in this Court, the clock has not run on them since, and will not begin to run again until thirty days after this action is no longer pending before us, unless Indiana law provides a longer tolling period.

No substantial federal resources have yet been expended on this case, which is still in the earliest stage of litigation.

Finally, it is not at all obvious how the state-law claims should be decided. In its briefing, Refined represents that it has withdrawn its common law indemnity claim, Br. Opp. 19, so we focus only on the claim under the ELA Statute. The difficulty there is the operation of recently enacted Ind. Code § 34-11-2-11.5, which provides that "a person may seek to recover . . . in an [ELA] . . . to recover costs incurred for . . . a remedial action . . . : [t]he costs incurred not more than ten . . . years before the date the action is

brought[.]" *Id.* § 34-11-2-11.5(b). The question is whether this provision sets a ten-year limit on damages recoverable in an ELA, with the timeliness of the ELA itself governed by other statutes of limitations as set forth in *Pflanz v. Foster*, 888 N.E.2d 756 (Ind. 2008), and *Peniel Group, Inc. v. Bannon*, 973 N.E.2d 575 (Ind. Ct. App. 2012), or, instead, supplants those other statutes of limitations and establishes as timely any ELA brought at any time for any portion of response costs incurred within ten years of filing.

*Bernstein* and *Peniel*, without addressing the question directly, appear to assume the latter reading. 733 F.3d at 216 n.16; 973 N.E.2d at 580 n.4. *Schuchman/Samberg Investments, Inc. v. Hoosier Penn Oil Company*, addressing the question directly but only in dicta, favors the former reading. 58 N.E.3d 241, 246 n.5 (Ind. Ct. App. 2016) (questioning *Bernstein*). Because the application of Ind. Code § 34-11-2-11.5 would likely be dispositive of our ruling on NL's motion to dismiss, with only uncertain state-court guidance it is not obvious how Refined's claim under the ELA Statute should be decided.

Accordingly, we relinquish jurisdiction over the state claims.

## Conclusion and Order

For the reasons explained above:

Counts I and II of the complaint are DISMISSED WITH PREJUDICE as precluded and untimely.

Counts III and IV of the complaint are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

Final judgment will be entered by separate document. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date:      9/25/2018

_SARAH EVANS BARKER, JUDGE_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Donald C. Biggs
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
dbiggs@taftlaw.com

Robert L. Collings
SCHNADER HARRISON SEGAL & LEWIS LLP
rcollings@schnader.com

Frank J. Deveau
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
fdeveau@taftlaw.com

Joel L. Herz
LAW OFFICES OF JOEL L. HERZ
joel@joelherz.com

J. Richard Moore
BLEEKE DILLON CRANDALL
richard@bleekedilloncrandall.com